**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **TAMAR BROWN**,<br><br>    Plaintiff,<br><br>v.<br><br>**SOUTHERN SENIOR ASSOCIATES, LLC d/b/a THE RESIDENCE AT OAK GROVE**, a Foreign Limited Liability Company, and **PLC EMPLOYEE II, LLC**, Foreign Limited Liability Company,<br><br>    Defendants. | Civil Action No. 7:23-CV-68 (HL) |

**ORDER**

Plaintiff Tamar Brown began working as the Executive Director for an assisted living facility managed by Defendant PLC Employee II, LLC ("PLC"), a third-party management company, in August 2020. The owner of the facility terminated its contract with PLC in August 2021. Defendant Southern Senior Associates, LLC d/b/a The Residence at Oak Grove ("Oak Grove") assumed management of the facility on October 1, 2021. Plaintiff remained on Oak Grove's staff until her termination on December 28, 2021.

Plaintiff filed this action against Defendants alleging Defendant Oak Grove discriminated and retaliated against her based on her race in violation of Title VII of the Civil Rights Act of 1962, 42 U.S.C. §§ 2000, et seq. ("Title VII). Plaintiff further alleges both Oak Grove and PLC discriminated and retaliated against her

in the making and enforcement of her employment contract and employment relationship in violation of 42 U.S.C. § 1981.

Now before the Court is Defendant PLC's Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 17). Having considered the motions, pleadings, and applicable law, the Court concludes Plaintiff has failed to state a claim against PLC upon which relief may be granted. The Court accordingly **GRANTS** PLC's Motion to Dismiss.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Tamar Brown, a black woman, began working for Defendant PLC on August 28, 2020. (Am. Compl. ¶ 12). PLC is a third-party management company. (Id. at ¶ 22). PLC hired Plaintiff as the Executive Director for one of the assisted living facilities the company managed. (Id. at ¶ 12).

Plaintiff alleges that while employed by PLC, she was subjected to racially motivated comments. For example, in December 2020, after requesting Heath Reneau, a white employee, perform a task, Reneau remarked, "I'm sick of this black bitch telling me what to do." (Id. at ¶ 13). PLC terminated Reneau later that month for poor work ethics. (Id. at ¶ 14). Plaintiff felt increased pressure as the Executive Director after Reneau's termination, particularly since Reneau's wife worked as PLC's Director of Sales. (Id.).

Mark Starks, PLC's Vice President of Operations, became Plaintiff's direct supervisor in January 2021. (Id. at ¶ 16). Plaintiff alleges she continued

struggling with "racial insubordination" by other employees. (Id. at ¶ 17). Plaintiff claims she found a letter written by Lindsay Clay, a white woman who served as the Business Office Manager, stating Plaintiff "was hiring all black people." (Id. at ¶¶ 17-18). Plaintiff alleges that rather than investigate Plaintiff's complaint that Clay made racist comments, PLC instead promoted Clay to Director of Sales. (Id. at ¶ 19). Plaintiff, whose role as Executive Director included recommending employees for vacant positions, did not believe Clay was qualified for the promotion. (Id. ¶¶ 20-21).

In August 2021, the owner of the assisted living facility terminated its contract with PLC. (Id. at ¶ 22). The owner of the facility informed staff members, including Plaintiff, that they were employees of the facility and not the management company. (Id. at ¶ 23). Jordan Cook, Divisional Director of Operations for Defendant Oak Grove, visited the assisted living facility on September 29, 2021. (Id. at ¶ 24). During his visit, Cook remarked to Plaintiff, "I like your hair much better like that, that's more the look." (Id. at ¶ 25). Plaintiff previously wore her hair in braids. (Id.). That day, she wore a straightened style. (Id.). Cook's remark made Plaintiff "feel violated as an African American [w]oman." (Id. at ¶ 26).

Oak Grove assumed management of the assisted living facility effective October 1, 2021. (Id. at ¶ 28). Oak Grove informed all employees that they were

3

on a 90-day probation period. (Id. at ¶ 29). Jordan Cook became Plaintiff's supervisor. (Id. at ¶ 30).

Soon thereafter, Plaintiff learned Lindsay Clay made false allegations against Plaintiff to Bobby Petras, Oak Grove's Chief Operating Officer, in an effort to get Plaintiff terminated. (Id. at ¶ 31). In November 2021, Plaintiff overheard Clay calling Plaintiff a "whore." (Id. at ¶ 32). When Plaintiff confronted Clay, Clay claimed, "I call everyone a whore." (Id. at ¶ 33). On November 20, 2021, Plaintiff reported Clay to Jordan Cook for making racist comments and engaging in other discriminatory conduct. (Id. at ¶ 34). Cook informed Plaintiff that Clay reported her for bullying, a claim Plaintiff strongly refuted. (Id. at ¶ 35).

On December 28, 2021, Jordan Cook and Cindy Dotson, the Vice President of Human Resources, met with Plaintiff. (Id. at ¶ 36). Cook and Dotson reminded Plaintiff of her probationary status and then terminated her. (Id. at ¶ 37-38). Cook and Dotson explained the decision to terminate Plaintiff's employment stemmed from her inability to communicate with others. (Id. at ¶ 38). They described her as an "aggressive communicator." (Id.). Plaintiff alleges Oak Grove terminated her based on her race and in retaliation for reporting acts of discrimination by other employees. (Id. at ¶¶ 39, 45).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 23, 2022, alleging Oak Grove discriminated against her in violation of Title VII. (Id. at ¶ 1). The EEOC issued a

4

Notice of Right to Sue on March 15, 2023. (Id. at ¶ 3). Plaintiff filed her Complaint in this Court on June 5, 2023, alleging that PLC and Oak Grove discriminated and retaliated against her based on her race in violation of Title VII and § 1981. (Doc. 1). PLC moved to dismiss Plaintiff's Complaint for failure to exhaust her administrative remedies as to PLC and for failure to state a claim on July 7, 2023. (Doc. 5). Plaintiff filed an Amended Complaint on July 27, 2023. (Doc. 11). Plaintiff's Amended Complaint eliminated any claims against PLC arising under Title VII. Plaintiff's remaining claims, which PLC now moves to dismiss, arise exclusively under § 1981.

## II.     MOTION TO DISMISS STANDARD

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims. Twombly, 550 U.S. at 556.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleading is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Twombly, 550 U.S. at 554-55 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted) (alteration in original). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Id. at 555 (citations omitted) (alterations in original). The complaint must contain enough factual allegations to "raise a right to relief above the speculative level." Id. at 555-56.

### III. DISCUSSION

#### A.  § 1981 Race Discrimination

PLC moves to dismiss Count III of Plaintiff's Amended Complaint, which asserts a claim against PLC for race discrimination under § 1981. Section 1981 provides that all persons "shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C § 1981(a). This right extends to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). "To state a claim

of race discrimination under § 1981, a plaintiff must allege facts establishing: (1) that [s]he is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." Moore v. Grady Mem'l Hosp. Corp., 834 F.3d 1168, 1171-72 (11th Cir. 2016).

Plaintiff's Amended Complaint contains sufficient factual allegations to satisfy the first and third elements of her prima facie case. The Amended Complaint fails, however, to set forth facts establishing that PLC intentionally discriminated against Plaintiff. A plaintiff may allege race discrimination through either direct or circumstantial evidence. See Ziyadat v. Diamondrock Hosp. Co., 3 F.4th 1291, 1296 (11th Cir. 2021) (citing Rioux v. City of Atlanta, 520 F.3d 1269, 1274 (11th Cir. 2008)). "Direct evidence is evidence that, if believed, proves the existence of discriminatory intent without inference or presumption." Jefferson v. Sewon Am., Inc., 891 F.3d 911, 921 (11th Cir. 2018). "To be direct evidence, the remark must indicate that the employment decision in question was motivated by race." Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-28 (11th Cir. 2002). The Eleventh Circuit has explained that "only the most blatant remarks, whose intent could be nothing other than to discriminate on the protected classification" qualify as direct evidence of discrimination. Id. at 1227 (internal quotation marks and citation omitted). Further, "remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not

evidence of discrimination." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998); see also Trotter v. Bd. of Tr. of Univ. of Ala., 91 F.3d 1449, 1453-54 (11th Cir. 1996) ("For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision.").

Plaintiff points to two allegedly discriminatory statements directed toward her during her employment with PLC. Plaintiff alleges that in December 2020, Heath Reneau, a white employee, remarked, "I'm sick of this black bitch telling me what to do." (Am. Compl. ¶ 13). In early 2021, Plaintiff discovered a letter written by Lindsay Clay, a white employee, accusing Plaintiff of "hiring all black people." (Id. at ¶ 18). Neither of these statements rises to the level of being an "overt invocation of race." Ziyadat, 3 F.4th at 1296 (explaining a claim of direct racial discrimination may be established through allegations of "a racial slur or racially charged language"). Plaintiff also does not allege that either Reneau or Clay were involved in any decision by PLC involving Plaintiff's employment. These statements thus are not direct evidence of discrimination.

Plaintiff's Amended Complaint also fails to set forth a claim of race discrimination through circumstantial evidence. Where a plaintiff relies on circumstantial evidence to establish racial discrimination under § 1981, the court may assess the plaintiff's claims using the same analytical framework articulated for Title VII cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

8

See Ziyadat, 3 F.4th at 1296 (citing Lewis v. City of Union City, Georgia, 918 F.3d 1213, 1220 n.5 (11th Cir. 2019) (en banc)). To state a claim of intentional discrimination under § 1981, a plaintiff accordingly must show that "(1) [s]he is a member of a protected class, (2) [s]he was qualified for the position, (3) [s]he suffered an adverse employment action, and (4) [s]he was treated less favorably than a similarly-situated individual outside h[er] protected class." Rodemaker v. Shumphard, 859 F. App'x 450, 451-52 (11th Cir. 2021) (citing Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003)). A § 1981 plaintiff further "must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, -- U.S. -- , 140 S. Ct. 1009, 1019 (2020).

The limited facts of Plaintiff's Amended Complaint do not state a race discrimination claim against PLC under § 1981. As PLC states, and Plaintiff does not dispute, Plaintiff has not pled that she suffered an adverse employment action while employed by PLC. Moreover, Plaintiff offers only a conclusory statement that PLC has "never, on any other occasions, acted in a similar manner with white former or current employees." (Am. Compl. ¶ 68). This statement alone falls far short of meeting the requirement that a plaintiff point to a comparator of a different race who was "similarly situated in all material respects" yet not subject to the same mistreatment. Lewis, 918 F.3d at 1229 (explaining "similarly situated" to mean that the comparators engaged in the same essential

9

conduct or misconduct, were subject to the same policy, worked under the same supervisor, and had similarly work experience and disciplinary history").

Plaintiff's Amended Complaint accordingly fails to set forth facts sufficient to establish a prima facie case of race discrimination under § 1981 against PLC. The Court therefore **GRANTS** PLC's motion to dismiss Plaintiff's claim for race discrimination.

### B. § 1981 Retaliation

PLC next moves to dismiss Plaintiff's § 1981 retaliation claim. Retaliation claims are cognizable under § 1981 and are analyzed under the same framework as Title VII claims. See CBOCS West v. Humphries, 553 U.S. 442, 452-57 (2008); Gogel v. Kia Motors Mfg. of Ga., Inc., 967 F.3d 1121, 1134 (11th Cir. 2020). To establish a prima facie case of retaliation, a plaintiff must show: "(1) that [s]he engaged in statutorily protected expression; (2) that [s]he suffered an adverse employment action; and (3) that there is some causal relationship between the two events." Johnson v. Miami-Dade Cnty., 948 F.3d 1318, 1325 (11th Cir. 2020).

Plaintiff alleges that she lodged a complaint with PLC after learning that Lindsay Clay wrote a letter accusing Plaintiff of only hiring black people. (Am. Compl. ¶¶ 18-19). For the purposes of this motion, the Court accepts Plaintiff's contention that her complaint constitutes a statutorily protected activity. Plaintiff's retaliation claim nevertheless fails as Plaintiff has not asserted that she suffered

any adverse employment action by PLC. Plaintiff thus has failed to state a claim of § 1981 retaliation. The Court accordingly **GRANTS** PLC's motion to dismiss Plaintiff's retaliation claim.

## IV.   CONCLUSION

For the reasons stated, the Court **GRANTS** Defendant PLC Employee II, LLC's Motion to Dismiss. (Doc. 11). Plaintiff's claims against PLC are hereby dismissed with prejudice.

The stay of discovery is lifted. Plaintiff and Defendant Southern Senior Associates, LLC d/b/a The Residence at Oak Grove shall submit a proposed scheduling and discovery order by not later than December 14, 2023.

**SO ORDERED**, this 14th day of November, 2023.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks